UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

LARRY E. HARRISON,

                    Plaintiff,                     Case No. 1:15-cv-1005

v.                                           Honorable Janet T. Neff

CARMEN PALMER et al.,

                    Defendants.

_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed on grounds of immunity and failure to state a claim.

**Discussion**

I.       Factual allegations

Plaintiff Larry E. Harrison presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Oaks Correctional Facility, though the actions about which he complains occurred while he was housed at the Michigan Reformatory (RMI).  He sues RMI Warden Carmen Palmer, RMI Mail Room Supervisor Unknown Party, and 30th Circuit Court Clerks Rlmontro and Kkirk.

Plaintiff complains that, on August 30, 2012, he filed one original and twelve copies of a complaint in the 30th Circuit (Ingham County) Court of Claims.  He also sought leave to proceed *in forma pauperis*, which was granted.  On August 31, 2012, Defendant Rlmontro docketed the pleadings and issued a summons.  On September 7, 2012, Plaintiff allegedly served a summons and complaint on two defendants, Doctor Christopher Marquart and Hackley Hospital.  During the next week, Plaintiff filed two amended complaints, both of which were docketed by Defendant Kkirk.  Defendant Kkirk issued summonses for Doctors Squire and Coleman on September 18, 2012, both of which were due to expire on December 18, 2012.  On September 25, 2012, Defendant Kkirk issued yet another summons, which expired on November 30, 2012, for service on Raymond Ingraham, Fox, Huntley, and Grigsby.  Plaintiff allegedly filed proofs of service applicable to ordinary, first-class mail.  On October 11, 2013, Hon. William E. Collette dismissed Plaintiff's action on the grounds that Plaintiff had failed to serve the defendants with a copy of the summons and complaint.

Plaintiff sought relief from judgment, asserting that the defendants had actual notice. He argued there, as he does in this action, that RMI, through its mail room supervisor and Defendant

Palmer, refused to allow Plaintiff to mail his complaints and summonses by registered mail, return receipt requested, because Plaintiff had insufficient funds to pay for the mailings and did not provide the prison a court order requiring the mailing.  As a consequence, Plaintiff simply used regular mail to accomplish service.  He stated that he filed documentation showing the prison disbursement forms used for mailing and the self-authored proofs of service.  He alleges that Defendants Rlmontro and Kkirk violated his rights by failing to docket his proofs of service.  The judge denied relief from judgment on the ground that the summonses and complaints had not been served in accordance with MICH. CT. R. 2.105(A), which requires the use of registered mail when service is accomplished through the mail.  In addition, the Court held that Plaintiff had failed to file a motion seeking alternative service under MICH. CT. R. 2.105(I).  Under those circumstances, the Court found that Plaintiff was not entitled to relief and that the action was properly dismissed.  (*See* 10/11/13 Cir. Ct. Ord., ECF No.1-1, PageID.14.)

Plaintiff contends that Defendants Rlmontro and Kkirk violated his rights to procedural and substantive due process and equal protection when they denied him access to the courts by failing to docket his noncompliant proofs of service.  He also alleges that Defendants Palmer and the unknown mail supervisor denied him his rights to substantive and procedural due process and access to the courts.  Further, he alleges that all Defendants violated the Eighth Amendment because the substance of his complaint concerned the lack of medical care.  Finally, Plaintiff alleges that Defendants violated their oaths of office and prison policy.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II.     Immunity

Plaintiff sues Defendants Rlmontro and Kkirk for their actions in handling his state-court filings.  Generally, a judge is absolutely immune from a suit for monetary damages.  *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.") (internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997).  Absolute judicial immunity may be overcome in only two instances.  First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity.  *Mireles*, 502 U.S. at 11; *see Forrester v. White*, 484 U.S. 219, 229 (1988) (noting that immunity is grounded in "the nature of the function performed, not the identity of the actor who performed it").  Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction.  *Id.* at 12.

Absolute judicial immunity is extended to non-judicial officers who perform "quasi-judicial" duties.  "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994) (probate court administrator entitled to quasi-judicial immunity for his role in carrying out the orders of the court) (citing *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir. 1989)); *see also Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997) (one who acts as a judge's designee in carrying out a function for which the judge is immune is also protected from suit seeking monetary damages); *Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988) (clerk of court was entitled to quasi-judicial immunity for issuing a warrant as directed

by the court); *accord Carlton v. Baird*, No. 03-1294, 2003 WL 21920023, at *1 (6th Cir. Aug. 8, 2003) (state court clerk's office employees were entitled to quasi-judicial immunity from state prison inmate's § 1983 claim); *Lyle v. Jackson*, No. 02-1323, 2002 WL 31085181, at *1 (6th Cir. Sept. 17, 2002) (quasi-judicial immunity applied to claims against state court clerks who allegedly failed to provide prisoner with requested copies of previous filings and transcripts); *Bradley v. United States*, 84 F. App'x 492 (6th Cir. 2003) (federal court clerk).  *Cf. Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 437 & n.11 (1993) (court reporter not entitled to absolute immunity for preparing transcripts because that function is ministerial; it does not exercise the kind of judgment protected by judicial immunity).  Defendants Rlmontro and Kkirk were clearly acting on behalf of the court when they handled Plaintiff's filings.  Because they are entitled to quasi-judicial immunity, Plaintiff may not maintain an action against Defendants Rlmontro and Kkirk for monetary damages.

### III.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill*

*v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1)

and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a

right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify

the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendants Rlmontro & Kkirk

To the extent that Plaintiff seeks injunctive relief in the form of an order requiring

Defendants Rlmontro and Kkirk to file his proofs of service, his claim is barred by the doctrine

known as *Rooker–Feldman*. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *District*

*of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983). The *Rooker-Feldman* doctrine

limits this Court's jurisdiction to adjudicate appeals from or collateral attacks on state-court rulings.

*Id.* The doctrine embodies the notion that appellate review of state-court decisions and the validity

of state judicial proceedings is limited to the Supreme Court under 28 U.S.C. § 1257, and thus that

federal district courts lack jurisdiction to review such matters." *In re Cook*, 551 F.3d 542, 548 (6th Cir.2009). The Rooker–Feldman doctrine applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.*, 544 U.S. 280, 284 (2005). "The pertinent question in determining whether a federal district court is precluded under the *Rooker–Feldman* doctrine from exercising subject-matter jurisdiction over a claim is whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment." *In re Cook*, 551 F.3d at 548.

In the instant case, the state court ruled that Plaintiff had not filed appropriate proofs of service, *i.e.* return receipts from registered mailings. The court also held that Plaintiff had wholly failed to pursue any proper remedy for his difficulty in utilizing registered mail through the prison and that actual notice did not meet the requirements of state law. Further, the court expressly fround that the state-court clerk's office and the Defendants in this action had not received any proofs of service that they had neglected to file.

As a consequence, Plaintiff's allegations against Defendants Rlmontro and Kkirk are based solely on injuries that were caused by the state-court judgment. Plaintiff's claims against Defendants Rlmontro and Kkirk therefore are barred by the *Rooker-Feldman* doctrine.

### B.    Defendant Palmer

Plaintiff's only allegations against Defendant Warden Palmer are that Palmer was responsible for supervising her employees and that Palmer denied his grievance about the refusal of the mail room supervisor to provide registered mail, ostensibly in violation of Plaintiff's right to access the courts.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Palmer engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

### C.      Mail Room Supervisor (Unknown Party)

Plaintiff contends that the unnamed mail room supervisor violated his right to access the court, provided under the First Amendment and the Due Process Clause. Specifically, he alleges that Defendant Unknown Party failed to follow MICH. DEP'T OF CORR., Policy Directive 05.03.118, under which Plaintiff allegedly should have been permitted to use registered mail to serve his summonses and complaints. Plaintiff also alleges that his right to equal protection was violated when Defendant Unknown Party refused to provide registered mail service.

1.        Access to the Courts

Defendant Unknown Party's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at \*1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).  Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, Plaintiff fails to state an access-to-the-courts claim.  It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25.  The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey*

*v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff

must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of

legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal

claim.  *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into
> litigating engines capable of filing everything from shareholder derivative actions to
> slip-and-fall claims.  The tools it requires to be provided are those that the inmates
> need in order to attack their sentences, directly or collaterally, and in order to
> challenge the conditions of their confinement.  Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals,

habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391

(6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous

claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis*

changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of

action . . . is an element that must be described in the complaint, just as much as allegations must

describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415

(2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the

underlying cause of action and its lost remedy must be addressed by allegations in the complaint

sufficient to give fair notice to a defendant."  *Id.* at 416.

Assuming without deciding that Plaintiff has sufficiently alleged that his underlying action was nonfrivolous, Plaintiff fails entirely to demonstrate that Defendant Unknown Party actually caused the injury to Plaintiff's litigation. According to Plaintiff's own allegations, he was informed early on that the prison required a court order in order to provide registered mail for an indigent party. Yet Plaintiff never requested a court order and never sought alternative service, despite the passage of one year before the case was dismissed. Instead, he simply proceeded to utilize a process not authorized by law to inform the defendants of the pending litigation. As a result, Plaintiff fails to allege facts that demonstrate that the unknown mail room supervisor took any action that actually caused Plaintiff's injury. By Plaintiff's own admissions, the injury to his litigation was caused by his own decisions to ignore court rules and remedies. Plaintiff therefore fails to state an access-to-the-courts claim.

## 2.      Equal Protection

Plaintiff broadly claims that he was denied equal protection when the unknown mail room supervisor refused to supply registered mail without a court order. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class. "[P]risoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998). Similarly, poverty is not a suspect or quasi-suspect classification. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973). Plaintiff's

claim therefore is subject to rational-basis review.   *See Club Italia Soccer & Sports Org., Inc. v.*

*Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006).

The Sixth Circuit has discussed a distinction in the types equal protection claims that

apply rational-basis analysis:

> In typical equal protection cases, plaintiffs "generally allege that they have been arbitrarily classified as members of an 'identifiable group.' "*Engquist* [*v. Oregon Dep's of Agric.*, 553 U.S. 591, 601 (2008)] (quoting *Personal Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).  When the identifiable group has been recognized as a suspect or quasi-suspect class, courts examine the classification under a heightened level of scrutiny.  *See, e.g., Regents of Univ. of Calif. v. Bakke*, 438 U.S. 265, 290–91 (1978) (opinion of Powell, J.) (treating race as a suspect classification); *Craig v. Boren*, 429 U.S. 190, 197 (1976) (treating gender as a quasi-suspect classification). When the identifiable group has not been recognized as a suspect or quasi-suspect class, courts examine the classification under rational basis review.  *See, e.g., Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976) (discrimination based on age).
>
> In contrast, in "class-of-one" claims, "the plaintiff [does] not allege membership in a class or group" but rather simply "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564. "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir.2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a group with whom she shares characteristics, but rather that the defendants simply harbor animus against her in particular and therefore treated her arbitrarily.").

*Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012).

Plaintiff does not identify the theory for his equal protection claim.  Assuming that

he intends to raise a claim that his right to equal protection was violated when he, as a member of

the class of indigent prisoners, was treated differently from prisoners who have money, Plaintiff fails

to state a claim.  As discussed, poverty is not a suspect classification.  *San Antonio Indep. Sch. Dist.*,

411 U.S. at 28.  As a consequence, the prison's policy of requiring a court order need only be rationally related to a legitimate governmental interest.  *See United States v. Kras*, 409 U.S. 434, 446 (1973); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).  To prove his equal protection claim, Plaintiff must demonstrate the policy involved "intentional and arbitrary discrimination" by the state . . . and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff fails to state a claim that indigent prisoners are denied equal protection by the prison rule governing mailings for indigent persons.  The policy provision in issue reads as follows:

> Funds for additional first class postage shall be loaned to prisoners who lack sufficient funds to send mail to a court, an attorney, or a party to a lawsuit due to pending litigation. This includes the initial filing and service of a lawsuit. The cost of certified mail shall be loaned only if the prisoner is required by court order to use certified mail (e.g., an order denying the prisoner's motion for substituted service by first class mail).

MICH. DEP'T OF CORR., Policy Directive 05.03.118 ¶ J.  The state unquestionably has an interest in limiting the cost of mailing charges it incurs on behalf of indigent prisoners.  The requirement of a court order constitutes an entirely rational basis for effecting that interest.  Moreover, the policy does not preclude a prisoner from pursuing his claims, it merely requires that the prisoner obtain the necessary order.  And the policy expressly instructs the prisoner that he must seek a court order for substituted service or to use certified mail.

To the extent that Plaintiff alleges that he was treated differently from all other prisoners, even indigent prisoners, he fails to state a claim under the "class-of-one" model.  To prove his class-of-one claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from

-13-

others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's allegation of discriminatory treatment is wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff alleges no facts suggesting that he was intentionally treated differently than any similarly situated person, nor has he identified such person. Moreover, his treatment appears to have been entirely consistent with prison policy.

Under either theory, therefore, Plaintiff fails to state an equal protection claim against the Unknown Party or any other Defendant.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed on grounds of immunity and failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: __November 2, 2015_____          __/s/ Janet T. Neff_____
                                              Janet T. Neff
                                              United States District Judge